IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH WILLIAMS, | ) | CASE NO. 1:11CV2370 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE ZOUHARY |
| v. | ) | |
| | ) | MAGISTRATE JUDGE MCHARGH |
| TERRY TIBBALS | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2. Petitioner, Joseph Williams ("Williams"), challenges the constitutionality of his conviction in the case of *State v. Williams*, Case No. 512151 (Cuyahoga County 2009). Williams filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254") on November 2, 2011 in the United States District Court for the Northern District of Ohio.  For the reasons given below, Williams' petition should be dismissed with prejudice.

I.

The State appellate court reviewing Williams' direct appeal found the following facts to be relevant to his case.  The court must accept these facts as true unless clear and convincing evidence proves otherwise:

{¶ 2} In July 2004, 27–year–old M.H. told his mother, Rita, that defendant, who is Rita's brother and M.H.'s uncle, molested him when he was 12 and again when he was 15.  Rita questioned defendant about this accusation.  Defendant sent Rita a letter admitting to the incident stating:  "This is the saddest letter I will ever

have to write. Yes, I had sexual contacts with [M.H.] when he was just a kid."

{¶ 3} M.H. and his parents decided not to report defendant to the authorities. However, Rita told her family, including her brother Glenn, about what defendant did to her son M.H. In turn, Glenn asked his three sons if defendant ever had inappropriate sexual relations with them. K.W., who is one of Glenn's sons and the victim in this case, said no.

{¶ 4} However, in the Fall of 2007, when K.W. was 23 years old, he told his parents that defendant raped him in March 1992, when K.W. was seven years old. K.W. was troubled by flashbacks of the molestation by his uncle. On December 14, 2007, K.W. checked himself into the hospital for mental health issues stemming from "an incident of being abused by his uncle when he was a small child."

{¶ 5} K.W.'s father, Glenn, questioned defendant about K.W.'s accusations. Defendant denied that anything happened; however, he eventually answered, "Unless I was drunk or out of it."

{¶ 6} On January 2, 2008, Glenn and K.W. reported the rape to the police, armed with defendant's letter admitting that he had raped K.W.'s cousin, M.H.

*State v. Williams*, 2010 WL 118118, at *1 (Ohio App. Jan. 14, 2010).

The May 2008 term of the Cuyahoga County grand jury indicted Wlliams on three counts of rape of a victim less than 13 years old with specifications of force or threat of force and one count of kidnaping with a sexual motivation specification. Williams pleaded not guilty to all charges. Prior to trial, the state filed a motion pursuant to Ohio Evid. R. 404(B) to admit other acts evidence related to Williams' assault of M.H. Williams opposed the motion. The court held a hearing on October 27, 2008 and granted the state's motion.

A jury trial began on December 16, 2009. Williams moved for dismissal pursuant to Ohio R. Crim. P. 29 at the close of the state's case and at the close of his case. The court denied both motions. The jury found Williams guilty on all counts. On December 30, 2009, the court merged the count of kidnaping with the counts of rape and

sentenced Williams to a mandatory term of life imprisonment on each of the counts of

rape, the sentences to be served concurrently.

Williams, represented by new counsel, timely appealed his conviction to the

state appellate court.  In his appellate brief, Williams asserted three assignments of

error:

> First Assignment of Error:
>
> > The state failed to present sufficient evidence to sustain a conviction
> > against appellant.
>
> Second Assignment of Error:
>
> > Appellant's convictions are against the manifest weight of the evidence.
>
> Third Assignment of Error:
>
> > The trial court erred when it admitted other acts testimony in violation of
> > R.C. 2945.59, Evid.R. 404(b) and Appellant's rights under Article I, Section 10
> > of the Ohio Constitution and the Fourteenth Amendment to the United States
> > Constitution.

On January 25, 2010, the state appellate court overruled Williams' third assignment of

error *en toto* and overruled his first and second assignments of error as they pertained

to the first two counts of rape and the count of kidnaping.  The court sustained,

however, Williams' first and second assignments of error with respect to the third count

of rape.  The court vacated that conviction and the accompanying sentence but

otherwise affirmed the judgment of the trial court.  The state appellate court then

remanded the case to the trial court for further proceedings.  Williams did not appeal

this decision to the Ohio Supreme Court.

The trial court vacated Williams' conviction and sentence on the third count of

rape on February 18, 2010.

On April 22, 2010, Williams timely filed in the state appellate court an application to reopen his direct appeal pursuant to Ohio App. R. 26(B).  In his application, Williams alleged that his appellate counsel had rendered ineffective assistance in the following respects:

I.       Failure to raise issue of ineffective assistance of [trial] counsel.

II.      Failure to raise allied offenses as an assignment of error.

III.     Failure to effectively and thoroughly argue the issue of the improper admission of other acts evidence.

Before the state appellate court could rule on his application, Williams filed a second application on June 17, 2010, raising the same assignments of error.  Both of Williams' applications to reopen asserted that appellate counsel had been ineffective for failing to argue that trial counsel was ineffective in the following respects:  (1) failure to call necessary alibi and exculpatory witnesses, (2) failure to conduct a reasonable investigation of the crime scene, and (3) failure to enlist a psychiatric expert to support the defense.  On January 7, 2011, the state appellate court denied Williams' first application on the merits and denied his second application as duplicative of the first.

Williams timely filed in the Ohio Supreme Court a notice of appeal of the state appellate court's decision denying his application to reopen.  In his memorandum in support of jurisdiction, Williams asserted seven propositions of law:

I.       When evidence of trial counsel's ineffectiveness is discernible from the record, appellate counsel's failure to raise that issue is itself appealable error.

II.      A defendant's right to effective assistance is denied when appellate counsel fails to competently argue an issue involving a defendant's right to due process and equal protection under the law.

4

III.    Appellate counsel cannot provide effective assistance if he never meets with appellant and when he does not timely inform appellant of the court's decision.

IV.    Trial counsel fails to provide reasonably effective assistance when he does not investigate, or even contact, exculpatory and alibi witnesses.

V.    Trial counsel's representation is deficient when he fails to investigate the credibility of the alleged victim when that victim suffers from severe mental problems and his testimony is the sole basis of the state's case.

VI.    In a sex offense case, defendant's due process and equal protection rights are violated when prior acts evidence is admitted as an exception to their strict exclusion pursuant to Evidence Rule 404(b) and statutory ORC 2907.05 and ORC 2945.59.

VII.    In sex offense cases, the admission of prior acts evidence almost always results in their inflammatory and prejudicial effect outweighing their probative value, and therefore should be excluded.

On April 6, 2011, the Ohio Supreme Court dismissed Williams' appeal as not involving any substantial constitutional question.

On November 2, 2011, Williams filed in this court a petition for a federal writ of habeas corpus.  In his petition, Williams asserts three grounds for relief and accompanying supporting facts:

**Ground One:**  ineffective assistance of trial counsel.

**Supporting Facts:**

1.    At the very first meeting between Applicant and his trial counsel, Applicant informed counsel that since he did not commit the crimes for which he was charged, he was not going to accept a plea bargain from the State.

2.    At that first meeting, Applicant clearly informed his trial attorney, John Standard, (hereinafter "Stanard") that he intended to take the case to trial.

3.    In spite of the fact that Applicant was facing four first degree felonies, each carrying a life sentence, Stanard met with Applicant for only one two-hour meeting to prepare for trial.

5

4.    At that two-hour meeting, Applicant was accompanied by his brother, Donald Williams, and his friend, Cindy Thomson, both of whom were present for the entire meeting.

5.    At the above-mentioned meeting, Applicant and his brother provided Stanard with the names and addresses of at least a dozen people who were present at the alleged crime scene during the relevant time period, and who were willing and eager to testify as to exculpatory and alibi evidence at trial.

6.    Stanard neither investigated, or subpoenaed any of the above-mentioned potential witnesses, a fact which was not known by Applicant until the first day of trial.

7.    Although Applicant and his brother informed Stanard prior to trial the extreme unlikelihood of a rape being committed in such a crowded setting as a nursing home filled with people walking all over the place, Stanard never investigated his alleged crime scene, but the prosecutor's detective did and testified at trial.

8.    At the one and only trial preparation meeting, Applicant asked Stanard to request permission to hire an investigator and psychiatric expert to assist in both trial preparation and at trial.

9.    In response to the above request, Stanard informed Applicant that the Public Defender Office did not have staff to do this and that the judge would never approve of such a request.

10.   During cross-examination of the alleged victim (hereinafter "K.W."), Stanard admitted that he was not prepared for the fact that K.W. had remembered the alleged rape continuously from the time it allegedly had occurred, and not as a "recovered memory," as Stanard had thought.

12.   At each pretrial, trial counsel was able to meet with Applicant for no more than ten minutes, during which counsel merely repeated the Stat's latest plea offer and never engaged in any trial preparation.

13.   Trial counsel declined to cross-examine a key State witness, Rita Henderson.

14.   All the witnesses who testified at trial, including each of the States' witnesses, admitted that at the time of the alleged rape, the alleged crime scene was crowded with people, including the nuns, nurses, and staff who run the nursing home, the extended family of the alleged victim's grandmother, the other residents of the home, and friends of the

6

decedent.

15.    Five of the potential witnesses who were not investigated nor subpoenaed by counsel, provided sworn affidavits to the facts listed above and said affidavits were attached to Applicant's 26(B) Motion to Reopen the Appeal.

16.    Unrebutted trial testimony indicated that K.W., changed his testimony concerning the crimes and on one occasion actually denied that Applicant had raped him.

17.    Because of the lack of psychiatric expert, defense counsel was unable to explain to the jury the effect of K.W.'s severe mental illness on the reliability of his testimony.

18.    At trial, K.W. admitted that prior to his reporting that Applicant had raped him, he had suffered a serious mental and emotional episode and was diagnosed as suffering from "paranoid schizophrenia," with a "history of delusions."

19.    Also, because of the lack of psychiatric expertise, defense counsel was not able to explain to the jury Applicant's lacking key characteristics of a pedophile, and thus the unlikelihood of the alleged crime.

20.    K.W. was the only State witness who could, and did, testify to his alleged rape and his testimony was the only evidence of the alleged crime.

21.    K.W. reported that the alleged rape had occurred seventeen months previously in a crowded nursing home where his entire extended family had gathered to await the imminent death of his grandmother.

22.    K.W. admitted at trial that prior to reporting the alleged rape, Appellant had lived with his family for several years.

23.    During the entire time Applicant lived with K.W.'s family, K.W. testified that he had a normal uncle/nephew relationship with Applicant.

24.    From the time of Applicant's arraignment until his trial, the court docket reveals that a total of ten pretrials were held at which Applicant was present for every one.

25.    As mentioned in #12 above, Stanard did not use that time to discuss trial strategy and did not update Applicant concerning the status of trial preparation.

7

26.　　All of the above facts were raised by Applicant in his 26(B) Motion and supported by affidavits pursuant to 26(B)(2)(d) ad (e).

27.　　In his 26(B) Motion, Applicant cited as support for his claim of ineffective assistance of trial counsel: 1) failure to call necessary alibi and exculpatory witnesses, 2) failure to investigate said witnesses, 3) failure to investigate the alleged crime scene, 4) failure to enlist an expert psychiatric witness to attack K.W.'s ability to distinguish truth from "delusions," and 5) meeting with client to prepare for trial only one occasion and for only two hours.

28.　　In his 26(B) Motion, Applicant argued that the example of trial counsel's ineffectiveness mentioned in §27 above prejudiced Applicant's ability to obtain a reversal and remand.

29.　　Although Applicant in his 26(B) Motion pointed to specific parts of the record which demonstrates trial counsel's ineffectiveness the appellate court found that "Appellate counsel in the exercise of professional judgment properly declined to raise an issue without support in the record."

30.　　Although Applicant supported his examples of trial counsel's ineffectiveness and the prejudice resulting therefrom by sworn affidavits pursuant to App.R. 26(B)(2)(d) and (e), the court declined to hold an evidentiary hearing as permitted under App.R. 26(B)(8).

**GROUND TWO:**  ineffective assistance of appellate counsel.

**Supporting Facts:**

1.　　During the entire course of appellate counsel's representation of Applicant, he never met with Applicant nor was Applicant able to communicate with counsel by phone.

2.　　During the pendency of the appeal, Applicant wrote to his counsel but his letters were not answered.

3.　　Applicant's brother, Donald Williams phoned appellate counsel several times on behalf of Applicant and left phone messages, but counsel never returned his calls.

4.　　Before appellate counsel completed the Appellant's Brief on behalf of Applicant, Applicant asked his counsel to raise the issue of trial counsel's ineffectiveness since he had reason to believe that trial counsel's deficient performance was indicated on the record.

8

5.      Applicant also had his brother deliver several pages of a suggested brief with appropriate citations to appellate counsel, highlighting the issue of ineffective assistance.

6.      Applicant's brother hand-delivered a copy of the above mentioned sample brief to appellate counsel at his law offices.

7.      Applicant never received any feedback or comments concerning the sample brief nor the issues of ineffective assistance contained therein from appellate counsel.

8.      Appellate counsel did not inform Applicant that he was not raising the issue of ineffective assistance in Appellant's Brief prior to filing it, nor did he advise Applicant of how he might preserve this important issue for further appellate review.

9.      Appellate counsel, Thomas Rein (hereinafter "Rein"), notified Applicant of the Appellate Court's decision and sent a copy of the Court's Judgment in a letter dated Feb. 5, 2010, which was already beyond the time in which Applicant could have filed an App. R. 26(A) Motion for Reconsideration.

10.     Because Rein failed to inform Applicant of his decision to not raise the issues of ineffective assistance of trial counsel in Appellant's Brief, Applicant did not have sufficient time in which to file a Motion for Post Conviction Relief pursuant to Ohio Revised Code 2953.21 in which that important constitutional issue could have been raised.

11.     In his 26(B) Motion, Applicant clearly raised the issue of ineffective assistance of Rein by pointing out his lack of persuasive argument in the Appellant's Brief regarding the issue of the improper admission of highly prejudicial prior acts evidence.

12.     Applicant attached to his 26(B) Motion six affidavits of potential witnesses who were present at the alleged crime scene during the relevant time period and who were willing and able to testify at trial.

13.     In their affidavits, the six affiants presented exculpatory and alibi evidence for Applicant.

14.     In the affidavits referred to in #12 and #13 above, the affiants submitted alibi and exculpatory evidence, thus highlighting the ineffectiveness of both trial and appellate counsels.

**GROUND THREE:**  Denial of due process and equal protection by improper admission of other acts evidence.

9

**Supporting Facts:**

1.  In his direct appeal, Applicant raised the issue of trial court's error in admitting prior acts evidence as violations of Due Process and Equal Protection under the Fifth and Fourteenth Amendments to the United States Constitution.

2.  In his appeal of the Eighth Appellate District Court's denial of Applicant's 26(B) Motion to Reopen the Appeal, Applicant presented this same constitutional issue to the Supreme Court of Ohio.

3.  The Ohio Supreme Court denied jurisdiction to hear Applicant's timely appeal in which he raised this constitutional issue, as well as the other two constitutional issues (Ineffective Assistance of Trial and Appellate Counsel) contained herein "…as not involving any substantial constitutional question."

4.  The only evidence of the alleged crimes for which Applicant was convicted is the uncorroborated testimony of the alleged victim, K.W.

5.  At trial the credibility of K.W. was contested by the facts that : 1) at first K.W. claimed that Applicant did not commit the alleged crimes, and 2) K.W. later substantially changed his account of the alleged rapes.

6.  Over the objection of defense counsel, the trial court allowed the introduction of prior sexual activity between Applicant and another of his nephews, M.H.

7.  The prior sexual acts consisted solely of Applicant performing oral sex on M.H. on two separate occasions when M.H. was still a minor.

8.  In contrast, K.W. testified at trial and in his statements to police that Applicant had performed oral sex on him, had K.W. perform oral sex on Applicant, and then Applicant performed anal sex on him.

9.  In its judgment of Applicant's direct appeal, the court dismissed the anal count as being unsupported by the evidence, which was solely the testimony of K.W.

10. Prior to trial, defense counsel objected to the introduction of the prior sex acts, but the trial court permitted their use by the prosecution with a jury instruction regarding their limited use.

11. In his direct appeal, Applicant had argued that the prior acts were not intrinsicly [sic] related to the sex acts charged and were removed in both

10

space and time from the acts alleged by K.W.

11.  [sic] The testimony of both M.H. and K.W. indicates significant differences between the prior sex acts involving M.H. and the acts alleged by K.W. including, but not limited to, the differences in their ages (an adolescent vs. a young boy), the type of sex acts (passive oral sex only and passive oral sex and anal sex), the time of day in which the acts occurred (late at nights vs. the idle of the afternoon), the place (a sleeping household vs. an open parlor in a crowded nursing home).  And the lack of any "plan" in the commission of the crime as alleged by K.W.

12.  When M.H.'s mother contacted Applicant about the sex acts with M.H., Applicant immediately admitted performing those acts and has never lied about them.

13.  In contrast, from the very first time when K.W.'s father confronted Applicant with K.W.'s allegations, all the way up to and including his testimony at trial, Applicant steadfastly and continuously denied having ever performed any sex acts whatsoever with K.W.

14.  Again in contrast, Applicant admitted his sex acts with M.H. in a letter to all of his extended family.

15.  At trial K.W. testified that Applicant had lived with him and his family for several years, during which time he had a "normal uncle/nephew relationship" with Applicant.

16.  Although K.W. testified that he did not have a "recovered memory" of the sex acts he alleged against Applicant, but had always remembered those acts, he did not confide that information to anyone until after he had suffered some kind of emotional/psychiatric breakdown.

17.  K.W. was then diagnosed as suffering from "paranoid schizophrenia with a history of delusions."

18.  K.W. also testified at trial that he fired his first psychiatrist who treated him after his breakdown because that doctor did not take his problems seriously.

19.  In his initial police report to Detective Fossett, K.W. had stated that in addition to the oral rapes, Applicant had inserted several fingers into his anal cavity.

20.  At trial, K.W. changed his story about the allegations of anal rape by saying that Applicant merely put something between his knees, thus

resulting in the Appellate Court's overturning that count.

21.    Furthermore, when K.W.'s father first asked K.W. directly if Applicant had ever molested him, K.W. denied it.

22.    The State did not produce any other prior sex acts evidence against Applicant, other than regarding M.H.

23.    Specifically, the State did not produce any evidence that Applicant had engaged in any sexual activity with any of his other twelve nephews, which arguably could have formed a "pattern" or "modus operandi."

(Capitalization and punctuation altered from the original.)  Respondent filed an

Answer/Return of Writ on April 20, 2012.  Doc. No. 10.  Petitioner filed a Traverse on

August 6, 2012.  Doc. No. 15.  Thus, the petition is ready for review.

II.

A.  *Jurisdiction*

The Court of Common Pleas of Cuyahoga County, Ohio sentenced Williams.

Williams filed his writ of habeas corpus in the Northern District of Ohio and raises

claims regarding the constitutionally of his incarceration under 28 U.S.C. § 2254:

Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Cuyahoga County is within this court's geographic

jurisdiction.  This court has jurisdiction over Williams's petition.

B.    *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited

12

circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Williams's claims involve legal issues which can be independently resolved without additional factual inquiry.

        C.     *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).  Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits.  28 U.S.C. § 2254(b)(2).

13

In the present case, both respondent and petitioner argue in the alternative that if the court finds any of Williams' claims to be unexhausted, the court should do one of the following:  (1) dismiss the petition, allow Williams to exhaust his claims, then re-file his petition when exhaustion is complete; (2) stay the case and hold it in abeyance pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), while permitting Williams to exhaust in state court his unexhausted claims; or (3) permit Williams to dismiss his unexhausted claims.

All of Williams' claims, however, have been exhausted.  Williams' first ground for relief, alleging ineffective assistance of trial counsel, was not raised during Williams' first appeal of right.  Williams did present this claim, however, to the Ohio Supreme Court as an independent claim during his appeal of the appellate court's denial of his R. 26(B) application as propositions of law IV and V.

Williams' second ground for relief, alleging ineffective assistance of appellate counsel, was first raised in his 26(B) application and was raised in the Ohio Supreme Court during his appeal of the denial of that application.

Williams' third ground for relief, alleging due process and equal protection violations resulting from the admission of "prior acts" evidence at trial, was raised during Williams' first appeal of right.  Williams failed to raise this claim in the Ohio Supreme Court on direct appeal, but he did raise this claim in the Ohio Supreme Court as an independent claim during his appeal of the appellate court's denial of his R. 26(B) application as propositions of law VI and VII.

Williams has raised all three of his grounds for relief in the Ohio Supreme Court.  There are no state procedures available to him for obtaining relief.  Consequently,

14

Williams' claims are exhausted.

D.    *Procedural default*

Respondent contends that Williams has procedurally defaulted his claims in his first ground for relief as independent claims and defaulted the claims in his third ground for relief because he failed to present these claims properly to the Ohio Supreme Court. As regards Williams' second ground for relief, ineffective assistance of appellate counsel, respondent contends that Williams has defaulted any ground for arguing ineffective assistance that was not fairly presented to the state courts.  Williams responds that he fairly presented all his claims[1] to the Ohio Supreme Court in his appeal of the denial of his R. 26(B) application.  For this reason, Williams contends, his claims are not procedurally defaulted.

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

---

[1]  Williams misreads respondent's Return of Writ as asserting merely that the claims in Williams' third ground for relief are procedurally defaulted.  Respondent also asserts, however, that Williams' claims in his first ground for relief are "not procedurally only to the extent he argues those claims as claims of ineffective assistance of appellate counsel . . . ."  Return of Writ at 16.  Respondent's brief is not a model of clarity in this respect, as is discussed below.

If the state argues that a petitioner has procedurally defaulted, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an  "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

### 1.    Procedural default and Williams' first and third grounds for relief

In the present case, Williams claims that he fully and fairly presented all his claims to the Ohio Supreme Court because he included those claims in his appeal of the appellate court's denial of his application to reopen pursuant to R. 26(B).  Williams errs with respect to his first and third grounds for relief.  Williams' appeal from the denial of his motion to reopen was an appeal from the appellate court's decision that Williams' appellate counsel did not render ineffective assistance.  When an appellant contends in state court that appellate counsel was ineffective for failing to raise certain claims, that contention fairly presents to the state court only the issue of ineffective assistance of appellate counsel.  It does not fairly present to the state court the underlying claims as

16

independent, substantive claims.  *See Goff v. Bagley*, 601 F.3d 445, 472 (6th Cir. 2010).  Williams, therefore, did not fairly present to the state courts the claims in his first and third grounds for relief as independent, substantive claims merely by including them as underlying claims in his claim of ineffective assistance of appellate counsel.

In his appeal of the denial of his R. 26(B) application to the Ohio Supreme Court, Williams not only raised a claim of ineffective assistance of counsel, but he also raised ineffective assistance of trial counsel and constitutional violations resulting from the admission of "prior acts" evidence as independent, substantive claims.  Nevertheless, raising these claims as independent claims in the Ohio Supreme Court did not fairly present those claims to the Ohio Supreme Court.

Williams did not fairly present his claim of ineffective assistance of trial counsel to the Ohio Supreme Court in his appeal from the denial of his R. 26(B) application because this was the first time the claim of ineffective assistance of trial counsel had been presented to the state courts as an independent claim.  When an appellant appeals to the Ohio Supreme Court, it is within that court's discretion to accept or not accept the appeal for review.  The United States Supreme Court has held that a habeas petitioner's submission of a new claim to the state's highest court on discretionary review is not a fair presentation to the state's courts.[2]  *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).  When Williams presented to the Ohio Supreme Court his allegations of ineffective assistance of trial counsel as an independent claim, that was a new claim,

---

[2]  Ohio law is in accord with this decision.  Under Ohio law, a criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it is first presented in the court below.  *See State v. Jester*, 32 Ohio St. 3d 147, 154, 512 N.E.2d 962 (1987).

presented for the first time to the Ohio courts as a stand-alone claim.  Williams did not,

therefore, fairly present ineffective assistance of trial counsel to the Ohio Supreme

Court.

Williams also failed to fairly present to the Ohio Supreme Court his alleged due

process and equal protection violations related to the admission of "prior acts"

evidence.  Williams first presented this claim to the state appellate court on direct

appeal.  However, Williams did not appeal the state appellate court's denial of relief on

this claim to the Ohio Supreme Court as part of his direct appeal.  If an appellant fails to

raise on direct appeal any claim which could have been raised on such an appeal, Ohio

considers the matter *res judicata* and bars litigants from raising that claim in any

subsequent proceeding.  *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).  The Sixth

Circuit has found that this rule is an adequate and independent ground which

forecloses review of a federal constitutional claim.  *Id.*; *see also Wong v. Money*, 142

F.3d 313, 322 (6th Cir. 1998).  Thus, when Williams asserted two propositions of law

related to the admission of "prior acts" evidence as independent claims in his appeal of

the appellate court's denial of his R. 26(B) application, those propositions of law were

barred by *res judicata*.  Consequently, Williams failed properly to present any claim

related to the admission of "prior acts" evidence to the Ohio Supreme Court.

Williams contends that he did not procedurally default his first and third grounds

for relief because no state court enforced a procedural sanction against him for violating

a state procedural rule.  He quotes *Bray v. Andrews*, 640 F.3d 731, 735 (6th Cir. 2011),

for the proposition that "for [a] petitioner to procedurally default her claim, she must

have violated an actual procedural rule and the state courts must have actually

enforced the procedural sanction."  Williams concludes that because no state court enforced a procedural sanction against him with respect to the claims in grounds one and two, he has not procedurally defaulted those claims.

Williams is mistaken with respect to his default of his claim of ineffective assistance of trial counsel because whether a state court cited a procedural rule is irrelevant to his default of that claim.  The United States Supreme Court has held that a habeas petitioner's submission of a new claim to the state's highest court on discretionary review is not fair presentation.  *Castille*, 489 U.S. at 351.  As this is what Williams did, that is the end of the matter.  Whether a state court cited a procedural rule is beside the point.

Williams is mistaken with respect to his constitutional claim related to the admission of "prior acts" evidence because *Bray* is distinguishable from his case.  In *Bray*, the state appellate court wrote an opinion in which it equivocally found Bray's sole claim to be procedurally defaulted then went to the merits of Bray's claim.  The Sixth Circuit construed the state appellate court's equivocal invocation of procedural default against finding such a default, particularly because the court examined the merits of Bray's claim at length.

In the present case, however, the Ohio Supreme Court did not write an opinion when it declined jurisdiction over Williams R. 26(B) appeal.  The Ohio Supreme Court typically declines review of appeals without a written opinion, as it did in Williams' case.  When a state court is silent as to the reasons for denying a petitioner's claim, the Sixth Circuit has applied the presumption that the state court "would not have ignored its own procedural rules and would have enforced the procedural bar."  *Simpson v. Sparkman*,

94 F.3d 199, 203 (6th Cir. 1996).  This court must presume, then, that the Ohio

Supreme Court enforced the procedural bar of *res judicata* against his claims related to

admission of "prior acts" evidence.  Williams has procedurally defaulted his first and

third grounds for habeas relief.

Under some circumstances, ineffective assistance of appellate counsel may

serve as cause for the default of claims during the first appeal of right.  *See Williams v.

Anderson*, 460 F.3d 789, 800 (6th Cir. 2006).  Williams argues that appellate counsel's

failure to raise claims of ineffective assistance of trial counsel was itself ineffective

assistance, and he also argues that he suffered prejudice as a result of this ineffective

assistance.  This is the substance of an argument for cause and prejudice for the

default of Williams' first ground for relief.

Williams does not explicitly argue that cause and prejudice should excuse the

procedural default of his first ground for relief.  Nevertheless, the court construes his

Traverse as making this argument, giving Williams' Traverse the liberal construction

due the pleadings of *pro se* litigants.  *See e.g. Haines v. Kerner*, 404 U.S. 519, 520

(1972) (per curiam) (holding a pro se complaint "to less stringent standards than formal

pleadings drafted by lawyers"); *Williams v. Browman*, 981 F.2d 901, 903 (6th Cir. 1992)

([P]ro se pleadings should be construed more liberally than pleadings drafted by

lawyers.").  This is particularly appropriate in the present case, where Williams has

made all of the substantive arguments necessary to showing cause and prejudice and

where respondent's convoluted assertion of the defense of procedural default[3] failed to

---

[3]  Respondent's assertion of the defense of procedural default with respect to
Williams' first and third grounds for relief as independent claims reads as follows:

clearly put Williams on notice that respondent considers Williams' first ground for relief defaulted as an independent claim.

Ineffective assistance of appellate counsel can only serve as cause to excuse Williams' default of his first ground for relief, however, if the claim of ineffective assistance of appellate counsel was not itself procedurally defaulted and is meritorious. Williams has not entirely defaulted his claim of ineffective assistance of appellate counsel.  As is shown below, however, Williams' claim of ineffective assistance of appellate counsel is without merit.  Consequently, it may not serve as cause to excuse Williams' default of his first ground for relief.

Williams does not demonstrate cause and prejudice for the default of his first and third grounds for relief, nor does he demonstrate that enforcing these procedural defaults will result in a fundamental miscarriage of justice.  These defaults should be enforced, therefore, and Williams' first and third grounds for relief should be dismissed as procedurally defaulted.

    2.    *Procedural default and Williams' second ground for relief*

Respondent does not contend that Williams' has completely defaulted the claims in his second ground for relief, ineffective assistance of appellate counsel.  Respondent does assert, however, that Williams has defaulted any ground for arguing ineffective

---

"Williams' claims in grounds one, two and three are exhausted and not procedurally only to the extent he argues those claims as claims of ineffective assistance of appellate counsel pursuant to his rule 26(b) application.  Ground three, also presented in his direct appeal, is otherwise procedurally defaulted."  Return of Writ at 16.  Respondent does not make the plain assertion anywhere in his Return of Writ that Williams procedurally defaulted his first ground for relief, although that is the necessary implication of the above quotation.

assistance that was not properly presented to the state courts.

In his application to reopen his direct appeal, Williams alleged that appellate counsel had been ineffective in three respects:  (1) failure to raise the issue of ineffective assistance of trial counsel; (2) failure to raise the issue that rape and kidnaping were allied offenses of similar import; and (3) failure to effectively and thoroughly argue the issue of the improper admission of other acts evidence.  In asserting that appellate counsel failed to raise the issue of ineffective assistance of trial counsel, Williams' contended that appellate counsel should have argued that trial counsel had been ineffective for failing to call necessary alibi and exculpatory witnesses, for failing to conduct a reasonable investigation of the crime scene, and for failing to enlist a psychiatric expert to support the defense.

When Williams appealed the denial of his R. 26(B) application to the Ohio Supreme Court, Williams asserted seven propositions of law in his table of contents, but he argued only three:  (1) ineffective assistance of appellate counsel for failure to argue the ineffectiveness of trial counsel; (2) ineffective assistance of appellate counsel for failure to competently argue that "other acts" evidence had been improperly and unconstitutionally admitted; and (3) the improper admission of "other acts" evidence.  In his memorandum in support of jurisdiction, Williams contended that appellate counsel should have argued that trial counsel had been ineffective for failing to call necessary alibi and exculpatory witnesses and failing to enlist a psychiatric expert to support the defense.

Williams did not raise in the Ohio Supreme Court his claim that appellate counsel had been ineffective for failing to raise the issue that rape and kidnaping were allied

22

offenses of similar import.  As this claim was not presented to the Ohio Supreme Court, Williams procedurally defaulted that claim.

Williams also contended in his memorandum in support of jurisdiction that trial counsel was ineffective for failing to meet with his client and for not informing him of the appellate court's decision.  Arguably, Williams' memorandum might be construed as arguing that these are claims that appellate counsel should have raised and was ineffective for not raising.  These claims were not raised, however, in the state appellate court, either as independent claims or as grounds for ineffective assistance of appellate counsel.  As already noted, any constitutional claim raised for the first time on discretionary review in a state court is not fairly presented to the state court.  *Castille*, 489 U.S. at 351.  As Williams did not fairly present to Ohio Supreme Court the claim that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for not meeting with his client or informing him of the appellate court's decision, that claim has also been procedurally defaulted.

For these reasons, Williams has defaulted all grounds for his claim of ineffective assistance of appellate counsel except the following:  (1) appellate counsel was ineffective for failing to raise the issue that trial counsel was ineffective for failing to call necessary alibi and exculpatory witnesses; (2) appellate counsel was ineffective for failing to raise the issue that trial counsel was ineffective for not enlisting a psychiatric expert to support the defense; and (3) appellate counsel was ineffective for failing thoroughly to argue that "other acts" evidence had been improperly and unconstitutionally admitted.  All other bases for ineffective assistance of appellate counsel have been procedurally defaulted.

23

Williams does not show cause and prejudice for the default of portions of his claim of ineffective assistance of appellate counsel, nor does he show that enforcing these defaults would result in a fundamental miscarriage of justice.  For this reason, all of Williams' grounds for ineffective assistance of appellate counsel except the three described in the previous paragraph should be dismissed as procedurally defaulted.

III.

The AEDPA altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in

24

> state court.  Under the statute, a federal court may grant a writ of habeas corpus
> if the relevant state-court decision was either (1) "*contrary to* . . . clearly
> established Federal law, as determined by the Supreme Court of the United
> States," or (2) "*involved an unreasonable application of* . . . clearly established
> Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is

"contrary to" clearly established federal law if it reaches a conclusion opposite to that

reached by Supreme Court holdings on a question of law or if it faces a set of facts

materially indistinguishable from relevant Supreme Court precedent and still arrives at

an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to

our clearly established precedent if the state court applies a rule that contradicts the

governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable

application of federal law only if the deciding court correctly identifies the legal principle

at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*,

237 F.3d 722, 729-31 (6th Cir. 2001).  The court will examine Williams' remaining

ground for relief using the deferential standard applied to state court rulings on the

petitioner's claims.

Williams alleges that he suffered ineffective assistance of appellate counsel

because (1) appellate counsel was ineffective for failing to raise the issue that trial

counsel was ineffective for not calling necessary alibi and exculpatory witnesses; (2)

appellate counsel was ineffective for failing to arguing that trial counsel was ineffective

for not enlisting a psychiatric expert to support the defense; and (3) appellate counsel

was ineffective for failing thoroughly to argue that "other acts" evidence had been

improperly and unconstitutionally admitted.  Defendants have a right to appointed

25

counsel for the first appeal of right.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  The standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), is applicable to claims of ineffective assistance of appellate counsel.  *See Bowen v. Foltz*, 763 F.2d 191, 194 n.4 (6th Cir. 1985).

A claim of ineffective assistance of counsel has two components.  First, a petitioner must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms."  *Strickland*, 466 U.S. 687-88.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision.  *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167.  In the appellate context, tactical choices regarding issues on appeal are properly left to the sound judgment of counsel.  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

Second, the petitioner must show that the deficient performance prejudiced the petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at

26

1168.  Further "the burden rests on the accused to demonstrate a constitutional violation."  *United States v. Cronic*, 466 U.S. 648, 658 (1984).  A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

Determining whether counsel was ineffective is a mixed question of law and fact.  *See Williams v. Taylor*, 529 U.S. 362 (2000).  When a federal court reviews the conclusions of a state court regarding counsel's alleged ineffectiveness, both the legal and the factual tests for determining whether habeas relief is warranted are brought into play.  *Id.* at 395-96.  That is, the reviewing court must determine whether the decision of the state court regarding counsel's alleged ineffectiveness (1) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and (2) resulted in a decision that was contrary to or involved an unreasonable application of a holding of the Supreme Court.  *Id.*  There are two ways in which a state court decision may involve an unreasonable application of a holding of the Supreme Court::

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 407.

In the present case, the state appellate court hearing Williams' claim of

ineffective assistance of appellate counsel accurately described the *Strickland* standard

by which Williams' claim should be evaluated.  The court then wrote the following in

rejecting Williams' claim:

> {¶ 6} [Under Ohio law] a appellate review is strictly limited to the record.  *The
> Warder, Bushnell & Glessner Co. v. Jacobs* (1898), 58 Ohio St. 77, 50 N.E. 97;
> *Carran v. Soline Co.* (1928), 7 Ohio Law Abs. 5 and *Republic Steel Corp. v.
> Sontag* (1935), 21 Ohio Law Abs. 358.  Thus, "a reviewing court cannot add
> matter to the record that was not part of the trial court's proceedings and then
> decide the appeal on the basis of the new matter.  See *State v. Ishmail* (1978),
> 54 Ohio St.2d 402, 377 N.E.2d 500.  Nor can the effectiveness of appellate
> counsel be judged by adding new matter to the record and then arguing that
> counsel should have raised these new issues revealed by the newly added
> material."  *State v. Moore,* 93 Ohio St.3d 649, 650, 2001-Ohio-1892, 758 N.E.2d
> 1130.  "Clearly, declining to raise claims without record support cannot constitute
> ineffective assistance of appellate counsel."  *State v. Burke,* 97 Ohio St.3d 55,
> 2002-Ohio-5310, ¶ 10, 776 N.E.2d 79.
>
> {¶ 7} The jury in 2007, convicted Williams of raping his seven year-old nephew in
> March 1992.  At the time Williams' mother was dying in a nursing home, and her
> extended family was staying there during the mother's last days.  The nephew
> testified that he found Williams alone in a parlor, and over the course of
> approximately 30 minutes, Williams performed various sexual acts on him.
>
> {¶ 8} Williams' first argument is that trial counsel was ineffective because he did
> not prepare adequately by examining the nursing home and calling multiple
> witnesses who would have testified that the nursing home was so crowded with
> relatives and that Williams was always with them, that it would have been
> impossible for Williams to be alone for 30 minutes with his nephew to perform
> those acts.  Although the record may permit the inference that such witnesses
> could have been called, the record does not contain what their testimony would
> have been.  Similarly, Williams argues that in his preparation with trial counsel,
> he stated that they needed a psychiatric expert to explain the significance of the
> nephew's mental problems.FN1  However, the record is devoid of what the
> proposed expert's testimony would have been.  Appellate counsel in the exercise
> of professional judgment properly declined to raise an issue without support in
> the record.
>
> FN1. There was evidence that at the time the nephew disclosed the sexual
> abuse, he was suffering from various mental and emotional problems.

*       *       *       *       *

{¶ 10} Finally, Williams argues that his appellate counsel did not adequately argue the third assignment of error: The admission of other acts evidence violated R.C. 2945.59, Evid.R. 404(B), and his constitutional rights to due process.  In 2004, Williams in a letter admitted that he had raped a fifteen-year-old nephew.  Williams denied, however, that he had raped the seven-year-old nephew.  Nevertheless, the letter was admitted into evidence. Appellate counsel argued that the letter "was introduced only to improperly inflame the passions of the jury and to attempt to show that Appellant is of bad character."  (Pg. 14 of appellant's brief.)  Williams now argues that appellate counsel did not adequately argue the issue by supporting it with the sufficient legal authority.  However, there is no prejudice.  This court thoroughly considered the argument, and one of the panel members wrote a dissent on this issue and cited most of the legal authority that Williams now says should have been cited. It is difficult to see how the additional authority would have made a difference.

*State v. Williams*, 2011 WL 193370, at *2-*3 (Ohio App. Jan. 7, 2011).

Williams' response does not challenge the reasonableness or the constitutionality of the state appellate court's decision.  First, Williams does not show that appellate counsel was ineffective for failing to argue that not calling exculpatory and alibi witnesses constituted ineffective assistance of trial counsel.  Williams contends that the appellate court's judgment was unreasonable because it "completely ignores the affidavits of the five witnesses who could have, and would have, and were willing to, testify on behalf of Petitioner, as well as the affidavit of Petitioner himself." Traverse at 23.  This argument misses the point.  The issue is not whether some evidence existed for exculpatory purposes.  The issue is whether appellate counsel *could have used* such evidence, given that appellate counsel was restricted to the record on appeal.  The appellate court determined that the record contained no such evidence and that, in the absence of such evidence, it was reasonable for appellate counsel to forego a claim that trial counsel was ineffective in this respect.  Williams fails to demonstrate that this was an unreasonable determination of the facts in light of

the record before the appellate court or was contrary to or an unreasonable application of a holding of the Supreme Court.

Second, Williams does not show that appellate counsel was ineffective for not arguing that trial counsel's failure to enlist a psychiatric expert constituted ineffective assistance of counsel.  In his Traverse, Williams argues that *trial* counsel was ineffective for failing to enlist a psychiatric expert, but he does not address the appellate court's argument with respect to *appellate* counsel.  The appellate court determined that "the record is devoid of what the proposed expert's testimony would have been." *Williams*, 2011 WL 193370 at *2.  Consequently, the court concluded that declining to raise an issue without sufficient support in the record was within appellate counsel's proper exercise of professional judgment.  Williams does not address this conclusion.

Third, Williams also does not show that appellate counsel rendered ineffective assistance by raising inadequate arguments regarding the admission of "prior acts" evidence.  Williams argues that appellate counsel's arguments were inadequate without addressing the state appellate court's conclusion about appellate counsel's performance:  Williams was not prejudiced by appellate counsel's performance because a dissenting opinion from the appellate court's decision cited most of the legal authority that Williams claimed should have been cited.  Because Williams does not address the finding that appellate counsel's performance did not prejudice him, he fails to demonstrate that his appellate counsel was ineffective.

In sum, Williams does not show that the appellate court's conclusion that appellate counsel was not ineffective was an unreasonable determination of the facts in light of the record before the appellate court or was contrary to or an unreasonable

30

application of a holding of the Supreme Court.  Consequently, Williams fails to demonstrate that he is entitled to habeas relief on his second ground for relief.  For this reason, Williams' second ground for relief should be dismissed as without merit.

IV.

For the reasons given above, Williams's first and third grounds for relief should be dismissed as procedurally defaulted.  All of Williams' second ground for relief should be dismissed as procedurally defaulted except three claims:  (1) appellate counsel was ineffective for failing to raise the issue that trial counsel was ineffective for not calling necessary alibi and exculpatory witnesses; (2) appellate counsel was ineffective for failing to raise the issue that trial counsel was ineffective for not enlisting a psychiatric expert to support the defense; and (3) appellate counsel was ineffective for failing thoroughly to argue that "other acts" evidence had been improperly and unconstitutionally admitted.  Those three grounds for relief should be dismissed as without merit.  As this accounts for all of Williams' grounds for relief, his habeas petition should be dismissed with prejudice.


Date:  July 1, 2013                          /s/ *Kenneth S. McHargh*
                                             United States Magistrate Judge


**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See United States v. Walters, 638 F.2d 947 (6th Cir. 1981).  See also Thomas v. Arn, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

31